IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KERRY M. SKELTON, | Case No. 6:16-cv-00115-AA |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

AIKEN, Judge:

Plaintiff Kerry M. Skelton brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On December 22, 2008, plaintiff applied for SSI, alleging disability beginning December 1, 2008. Tr. 149. She later amended her alleged onset date to December 22, 2008, the date of her application. Tr. 746. Born June 4, 1971, plaintiff was thirty-seven years old when she

Page 1 – OPINION AND ORDER

submitted her SSI application. Tr. 149. She alleged disability due to back pain, neck pain, hip pain, anxiety, and depression. Tr. 157.

Plaintiff's application was denied initially and upon reconsideration. Tr. 95–98, 103–05. On June 15, 2011, she appeared at a hearing before an ALJ. Tr. 49–89. The ALJ found her not disabled in a written decision issued October 14, 2011, Tr. 13–23, and the Appeals Council denied review, Tr. 1. On appeal, this Court remanded for further proceedings, finding that the ALJ committed harmful error by (1) failing to explain how much weight he had afforded to a series of Global Assessment of Functioning ("GAF") scores assessed by a treating physician and (2) failing to acknowledge a potential conflict between plaintiffs' physical capacities and the amount of overhead reaching required by some of the jobs identified by the vocational expert. *Skelton v. Comm'r of Soc. Sec.*, 2014 WL 4162536, at *11, *13 (D. Or. Aug. 18, 2014).

On remand, plaintiff submitted additional medical evidence and appeared at an August 28, 2015, hearing before a different ALJ. Tr. 735–72. The ALJ found plaintiff not disabled on September 25, 2015. Tr. 713–27. Plaintiff appealed that decision to this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one

interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 715; 20 C.F.R. §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "obesity; fibromyalgia; status-post cervical spine fusion at C6-7; status-post right rotator cuff repair; right brachial plexis; recent onset of left shoulder pain, secondary to probable impingement syndrome; bipolar disorder; and post-traumatic stress disorder (PTSD)[.]" Tr. 715; 20 C.F.R. §§ 416.920(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 715; 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

The ALJ found plaintiff retained the residual functional capacity to

> Perform light work as defined in 20 [C.F.R. §] 416.967(b) except that she is further limited to no more than frequent stooping, crouching, kneeling, balancing or climbing of ramps and stairs. The claimant is limited to no more than occasional crawling, bilateral overhead reaching or climbing of ropes, ladders or

Page 3 – OPINION AND ORDER

scaffolds. The claimant is further limited to simple, repetitive routine tasks requiring no more than occasional interaction with the general public.

Tr. 716; 20 C.F.R. § 416.920(e). At step four, the ALJ concluded plaintiff had no past relevant work. Tr. 726; 20 C.F.R. § 416.920(a)(4)(iv), (f). At step five, the ALJ found plaintiff could perform several jobs existing in significant numbers in the national economy: mail clerk, information router, and electronics worker. Tr. 727; 20 C.F.R. §§ 416.920(a)(4)(v), (g). Accordingly, the ALJ found plaintiff not disabled and denied his application for benefits. Tr. 727.

## DISCUSSION

Plaintiff asserts the ALJ committed harmful error in evaluating the credibility of plaintiff's subjective symptom statements, weighing the medical opinion evidence, and assessing which jobs plaintiff would be able to perform. I address each argument in turn.

I. *Plaintiff's Subjective Symptom Testimony*

When a claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in

the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified that she is unable to work because of left shoulder pain, a frayed right bicep, chronic neck pain, anxiety, and depression. Tr. 746–47. With respect to her physical limitations, she cannot concentrate when in pain and cannot lift anything due to her neck and shoulder problems. Tr. 173. She has aches, muscle spasms, and burning sensations in her lower back. Tr. 75. Due to pain, it takes several hours to do chores such as dishes or laundry. Tr. 170–71. She is unable to lift anything over her head or reach into cupboards, "[i]t doesn't matter if it's a can of corn or a plate." Tr. 755. She cannot hold a gallon of milk and even pouring a cup of coffee is a struggle. Tr. 756. Numbness in her fingertips is triggered by writing, washing dishes, and lifting anything heavy. Tr. 70. Her 2006 shoulder surgery did not resolve her pain; instead, it now "hurts different." Tr. 72. Driving and doing chores such as cooking or dishes makes her neck pain worse. Tr. 73. She is unable to vacuum because she cannot pull with her right shoulder and her left arm is too weak. Tr. 73. She cannot mow the grass at all, and can only sweep for a few minutes before her arm and low back begin to hurt. Tr. 74. Although she can start a load of laundry, she needs her children's help to move the wet clothes from the washing machine to the dryer. Tr. 74. Her fibromyalgia affects "everything" from sitting down to lying in bed, with "every muscle and joint" aching and burning. Tr. 173. She takes pain medication but it does not help her pain at all. Tr. 747. She estimates she can stand for a maximum of ten to fifteen minutes at a time and sit for a maximum of forty minutes at a time. Tr. 76.

Regarding mental limitations, plaintiff stated that she does not associate with people because they irritate her or make her angry. Tr. 173. She has panic attacks when she is around a

Page 5 – OPINION AND ORDER

large group of people. Tr. 173. She sometimes abandons a cart full of groceries at the store due to these attacks. Tr. 79. Medication helps with the panic attacks but does not make them go away. Tr. 81. She also suffers from depression and has a history of past trauma. Tr. 175, 747. She is not in counseling because she does not "like to divulge personal information to strangers." Tr. 81. She has "no girlfriends" and "no people [she] can trust." Tr. 175.

The ALJ gave little weight to plaintiff's subjective symptom testimony for three reasons. First, the ALJ found the purported severity of the symptoms inconsistent with plaintiff's daily activity level. Second, the ALJ noted inconsistencies between plaintiff's testimony and the medical evidence. And third, the ALJ noted plaintiff's poor work history and concluded that history suggested plaintiff decided not to work for reasons other than disability.

The inconsistency between plaintiff's symptom testimony and her daily activity level is a clear and convincing reason to question her statements about her physical symptoms. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). Plaintiff described very severe limitations, including that she has to spend most of the day sitting down or lying down and cannot lift a gallon of milk or pour a cup of coffee. The ALJ reasonably found those limitations inconsistent with plaintiff's statements that she is able to care for two children (including giving them daily baths), Tr. 168; do a variety of household chores, including sweeping, vacuuming, wiping counters, doing the dishes, driving, and shopping, Tr. 170–71; care for household pets, Tr. 169; walk her children to school every morning, Tr. 78; and work in her garden, Tr. 68–69. To be sure, plaintiff consistently testified that she experienced moderate to severe limitations in her ability to do those activities. But the ALJ permissibly concluded that, even accounting for those limitations, plaintiff would not have been able to sustain her reported activity level if her symptoms were as extreme as she alleged. *See* Tr. 724 ("Despite the claimant's allegations of acute pain,

depression, or anxiety, her actual level of functioning is much more consistent with an individual who would be able to sustain work with some accommodation of her physical and mental symptoms.").

Plaintiff relies heavily on the ALJ's statement that her symptom testimony is "particularly" inconsistent with a few examples of more vigorous activity, such as kicking a soccer ball and pushing a lawnmower. Tr. 724. I agree with plaintiff that there is no indication she engaged in such activities on a regular basis. But the ALJ did not suggest plaintiff played soccer or mowed the lawn often; he cited those incidents as more extreme examples of inconsistencies between the purported severity of plaintiff's symptoms and her activity level. The ALJ found plaintiff's alleged symptom severity inconsistent with her everyday activities. As explained above, that finding is supported by substantial evidence.

The conflicts between plaintiff's symptom testimony and the medical evidence are also a clear, convincing reason to give her symptom testimony less weight. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). For example, at the June 2011 hearing, plaintiff testified that her 2006 shoulder surgery did not resolve her pain problems. Tr. 72. The ALJ permissibly found that testimony inconsistent with a 2009 medical record in which plaintiff's treating physician stated, with respect to recovery after the surgery, "I think this patient is doing great. She will continue to increase her range of motion and strength. . . . I have no restrictions for her at this time. She can go back to all activities of daily living. She is maxillary medically improved." Tr. 577.

Finally, the ALJ permissibly considered plaintiff's work history in evaluating her symptom testimony. Plaintiff has a sparse history of part-time work and has never worked at the substantial gainful activity level. Tr. 158. The ALJ permissibly considered those facts in

evaluating plaintiff's symptom statements. *Thomas*, 278 F.3d at 959. Moreover, in her written disability report, plaintiff stated that she left her last part-time job due to domestic violence issues and did not tie the decision to stop working to her limitations. Tr. 157. Standing alone, this would not be a sufficient reason to discredit plaintiff's testimony. However, the ALJ reasonably considered plaintiff's explanation of why she left her job evidence that her decision not to work was tied to reasons other than disabling impairments. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff correctly points out that the record is ambiguous and her poor work history could be attributable to her mental limitations. Nonetheless, I am bound to uphold the Commissioner's interpretation of the evidence because it is rational. *Thomas*, 278 F.3d at 959.

The ALJ provided clear, convincing reasons supported by substantial evidence to afford little weight to plaintiff's testimony about the severity of her symptoms.

II.     *Medical Opinion Evidence*

There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; 20 C.F.R. § 404.1527(d). Where there is a conflict between two medical opinions, the ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202. Medical opinions may address both the nature of the plaintiff's limitations and the ultimate issue of disability, *i.e.*, whether the plaintiff is capable of any work, given her limitations. *Id.* Although

the ultimate decision regarding disability is reserved to the Commissioner, 20 C.F.R. § 404.1520(e)(1), the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Plaintiff asserts the ALJ erred by improperly rejecting the opinions of treating physician Dr. Phillips and examining physician Dr. Alvord, and by failing to assign weight to a series of low GAF scores.

### A. *Dr. Phillips's Opinions*

Dr. Phillips has been plaintiff's treating physician since 2005. Tr. 579. In February 2011, Dr. Phillips provided a written opinion about plaintiff's functional limitations ("2011 letter"). Tr. 579–80. Dr. Phillips explained that plaintiff "had a multitude of medical and psychiatric diagnoses, including chronic pain from a variety of objective diseases and injuries, and the mental health problem of bipolar disorder." Tr. 579. Dr. Phillips stated that plaintiff's "most debilitating" limitation is the decreased motion, pain, and numbness in her right arm and hands. Tr. 579. Dr. Phillips opined that plaintiff "would likely not be capable of light work or even sedentary work on a full time basis." Tr. 579. Dr. Phillips expressly relied on plaintiff's report of her own symptoms in formulating his opinion, though he noted that plaintiff's symptoms are "typical of what I have seen in many other patients with her diagnoses" and stated that he believed plaintiff reported her symptoms "earnestly." Tr. 579.

In 2012, Dr. Phillips completed a two-page functional limitations questionnaire ("2012 questionnaire"). He opined that plaintiff would be able to lift or carry a maximum of five to ten pounds, stand for a maximum of two hours, and sit for a maximum of two hours. Tr. 708. He

also assessed a limited ability to push and pull with her arms and stated that plaintiff could never reach and could only occasionally handle, climb, balance, bend, or kneel. Tr. 708.

Finally, in 2014, Dr. Phillips completed a form for the state Department of Human Services ("2014 form"). Tr. 1020. On that form, Dr. Phillips declined to recommend plaintiff for job search/employment, work experience, or vocational rehabilitation, and opined that plaintiff was a candidate for Social Security disability. Tr. 1020.

The ALJ gave little weight to Dr. Phillips's opinions. Tr. 725. Because Dr. Phillips's opinions about plaintiff's limitations conflict with the opinion of reviewing physician Dr. Alley, the ALJ was required to support his decision with specific, legitimate reasons. After a careful review of the record, I conclude the ALJ's reasoning meets that standard.

The ALJ rejected the 2011 letter because it expressly relied on plaintiff's report of her symptoms, which the ALJ had already discredited. That is a legitimate reason to give less weight to Dr. Phillips's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *see also Skelton*, 2014 WL 4162536 at *6 (in the previous appeal, affirming the ALJ's decision to give little weight to Dr. Phillips's 2011 letter on this same ground). The ALJ also found the limitations assessed by Dr. Phillips were not supported by the medical evidence and not based on diagnostic findings. That reason, too, is legitimate and supported by substantial evidence. *See Skelton*, 2014 WL 4162536 at *7, *9 (citing normal EMG and nerve conduction studies and evidence that plaintiff "obtained good relief from her neck and shoulder surgeries" in affirming the ALJ's determination that the limitations expressed in the 2011 letter were inconsistent with the medical record).

Plaintiff argues that the ALJ's reasons do not support rejection of the 2011 letter because her pain is caused, in part, by fibromyalgia, which eludes objective measurement and is

diagnosed based solely on a patient's subjective complaints. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Plaintiff's fibromyalgia diagnosis does not change the analysis. Because of the nature of the condition, subjective symptom testimony is particularly important in cases involving fibromyalgia. As noted in the previous section, the ALJ provided three clear, convincing reasons to discredit plaintiff's subjective symptom testimony. The fact that plaintiff has a fibromyalgia diagnosis does not override the ALJ's evaluation of plaintiff's symptom testimony.

The ALJ discredited the 2012 questionnaire because it did not address negative clinical findings regarding a cervical condition, did not explain how the assessed limitations were consistent with plaintiff's daily activity level, and was inconsistent with the overall record. Tr. 725. The ALJ rejected the 2014 form for similar reasons, finding that there were no clinical findings to support the assessed limitations and that the form did not address plaintiff's demonstrated level of functioning. *Id.* Those are specific, legitimate reasons to disregard Dr. Phillips's opinion. Read in isolation, the statements regarding inconsistency with the medical record and plaintiff's activity level lack the specificity required to reject a treating physician's opinion. But read in the context of the whole opinion, it is clear the ALJ made the requisite specific findings. Just as in plaintiff's previous appeal, the ALJ's general statements about inconsistencies follow several pages of in-depth discussion of the medical evidence and the evidence of plaintiff's daily activities. Tr. 717–24; *Skelton*, 2014 WL 4162536 at *9. The ALJ reasonably found inconsistencies between the limitations assessed by Dr. Phillips and much of that evidence. For example, Dr. Phillips's opinion that plaintiff cannot do any reaching or lifting is irreconcilable with the fact that plaintiff does several activities that require reaching and lifting, including cooking, cleaning, shopping, and bathing for her children. Similarly, Dr.

Phillips's opinion that plaintiff has severe limitations standing and walking is undermined by the absence of medical findings anywhere in the record documenting problems in those areas.

The RFC provides limitations consistent with some of Dr. Phillips's opinion. For example, the ALJ limited plaintiff to light work, with additional limitations on stooping, crouching, kneeling, balancing, climbing, crawling, and bilateral overhead reaching. Tr. 716. To the extent Dr. Phillips's opinion would require restrictions beyond those included in the RFC, the ALJ discredited it based on specific, legitimate reasons supported by substantial evidence.

B.  *Dr. Alvord's Opinion*

Dr. Alvord evaluated plaintiff on August 10, 2015. Tr. 1005. Dr. Alvord based his evaluation on a clinical interview, mental status examination, and review of available records. Tr. 1005. Dr. Alvord opined that plaintiff would not have difficulty performing simple and repetitive tasks, but that she would have difficulty performing detailed and complex tasks, accepting instructions from supervisors, interacting with coworkers and the public, performing work activities on a regular basis without special instructions, maintaining regular attendance, and dealing with the usual stress encountered in the workplace. Tr. 1009.

The ALJ gave no weight to Dr. Alvord's opinion. Tr. 726. Because Dr. Alvord's opinion conflicts with the opinion of reviewing physician Dr. Anderson, the ALJ was required to support his decision with specific, legitimate reasons. Once again, the ALJ met that standard.

The ALJ found there was no support in the narrative body of Dr. Alvord's opinion for the severity of the assessed limitations, and that nothing in the mental status examination suggested plaintiff was suffering from significant symptoms. Tr. 726. That finding is supported by substantial evidence and is a legitimate reason to give Dr. Alvord's opinion less weight. Dr. Alford deemed plaintiff's thought processes, memory, attention/concentration, abstract thinking,

and insight/judgment "intact," "adequate," or "within normal limits." Tr. 1008. Although Dr. Alvord reviewed other records, he did not explain how those records provided support for limitations so out of step with the findings in his own mental status evaluation. The only portions of Dr. Alvord's report that could support limitations as severe as those he assessed appear to relate to plaintiff's subjective description of her symptoms. As noted, the ALJ permissibly discredited those statements.

The ALJ further found the extremity of the limitations Dr. Alvord assessed inconsistent with the record as a whole and with plaintiff's daily activity level. Tr. 726. Those are specific, legitimate reasons to discredit Dr. Alvord's opinion. As with Dr. Phillips's opinion, these seemingly general reasons gain the requisite specificity when read in the context of the opinion as a whole. The ALJ carefully summarized the medical record and the evidence regarding plaintiff's activity level, and permissibly found that evidence inconsistent with limitations at the level assessed by Dr. Alvord.

Once again, the RFC accounts for several of the limitations assessed by Dr. Alvord. For example, plaintiff is limited to simple, repetitive, routine tasks and can interact with the public only occasionally. Tr. 716. To the extent Dr. Alvord's opinion would require additional restrictions, the ALJ provided specific, legitimate reasons to discredit it.

C. *GAF Scores*

Finally, plaintiff contends the ALJ erred in failing to give weight to a series of GAF scores assessed by treating physician Dr. Smolen. In the previous appeal, this Court found the ALJ erred by failing to discuss the GAF scores and directed the Commissioner to address those scores on remand. *Skelton*, 2014 WL 4162536 at *11.

Page 13 – OPINION AND ORDER

GAF scores are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (quoting *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)). "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability . . . , they may be a useful measurement." *Id.*

Providers at Linn County Mental Health Services, primarily Dr. Smolen, consistently gave plaintiff GAF scores of 45 or 48 between 2008 and 2015. Tr. 264, 269, 488, 516, 629, 703, 935, 1022, 1024, 1030, 1032, 1033, 1034, 1035, 1041. A GAF score between 41 and 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." *Garrison*, 759 F.3d at 1002 n.4. The medical records do not contain specific functional limitations or explain the rationale behind the GAF scores.

The ALJ gave "little to no weight" to the scores, finding them inconsistent with "the fact that the claimant showed some level of social functioning and cognitive ability throughout the period at issue" and with plaintiff's daily activity level. Tr. 725–26. The ALJ's treatment of the GAF scores is supported by substantial evidence. The ALJ permissibly considered plaintiff's demonstrated level of functioning, specifically her ability to care for her children, perform most chores, drive, shop, and participate in other activities, inconsistent with symptoms so severe they would preclude all full-time work.

III. *Step Five Analysis*

Finally, plaintiff argues that the ALJ erred at step five when he found that she could perform the jobs of mail clerk, information router, and electronics worker. Plaintiff contends

there is an inconsistency between the reasoning level required by those jobs and the RFC's limitation to simple, repetitive, routine tasks.

The ALJ incorrectly stated that mail clerk has a reasoning level of two; in fact, it has a reasoning level of three. Dictionary of Occupational Titles § 209.687-026 (4th ed. 1991), *available at* 1991 WL 671813. The Ninth Circuit has held that there is a potential inconsistency between reasoning level three and a limitation to simple, routine tasks. *Rounds v. Comm'r*, 807 F.3d 996, 1002–04 (9th Cir. 2015). The ALJ therefore erred in concluding that plaintiff could perform the job of mail clerk. But that error was harmless. The ALJ correctly stated that information router and electronics worker are reasoning level two jobs. This Court has repeatedly held that there is no inconsistency between reasoning level two and a limitation to simple, routine tasks. *See Reaves v. Colvin*, 2016 WL 775754, at *7 (D. Or. Feb. 24, 2016) (collecting cases). The ALJ carried his burden at step five by identifying information router and electronics worker as jobs plaintiff could perform consistent with her RFC.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is dismissed.

IT IS SO ORDERED.

Dated this ___ day of April 2017.

_____
Ann Aiken
United States District Judge

Page 15 – OPINION AND ORDER